IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| NICHOLAS DONALD BURNS, #A5003928,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>STATE OF HAWAII, *et al.*,<br><br>　　　　　Defendants. | Civ. No. 23-00143 JMS-KJM<br><br>ORDER DISMISSING PRISONER CIVIL RIGHTS COMPLAINT, ECF NO. 1, WITH PARTIAL LEAVE TO AMEND |

## ORDER DISMISSING PRISONER CIVIL RIGHTS COMPLAINT, ECF NO. 1, WITH PARTIAL LEAVE TO AMEND

Before the court is a Prisoner Civil Rights Complaint ("Complaint"), ECF No. 1, filed by pro se Plaintiff Nicholas Donald Burns ("Burns") pursuant to 42 U.S.C. § 1983.[1] Burns alleges that Defendants[2] violated his constitutional rights by failing to follow agency guidelines while setting his minimum term of imprisonment (Count I), by denying him additional time to prepare for trial (Count

---

[1] Burns is currently incarcerated at the Halawa Correctional Facility, a state prison. *See* ECF No. 1 at PageID.1; *see also* VINE, https://vinelink.vineapps.com/search/HI/Person (select "ID Number"; enter "A5003928"; and select "Search") (last visited Apr. 6, 2023).

[2] Burns names as Defendants the State of Hawaii, Edmund "Fred" Hyun (chairperson, Hawaii Paroling Authority), Melvin H. Fujino (former circuit judge, Circuit Court of the Third Circuit, State of Hawaii), and Marco Secobia (sergeant, Hawaii Police Department). ECF No. 1 at PageID.1–PageID.2. Burns names the individual defendants in both their individual and official capacities. *Id.*

II), by denying his two requests to "fire" his court-appointed counsel (Count III), by revoking his bail (Count IV), and by arresting him pursuant to a previously executed warrant (Count V). *Id.* at PageId.5–PageID.9.  After conducting the required screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a), the court DISMISSES the Complaint with partial leave granted to amend.  If Burns wants this action to proceed, he must file an amended pleading that cures the noted deficiencies in his claims on or before **May 8, 2023**.  In the alternative, Burns may inform the court in writing on or before **May 8, 2023**, that he would like to dismiss voluntarily this action pursuant to Federal Rule of Civil Procedure 41(a)(1), and such a dismissal will not count as a "strike" under 28 U.S.C. § 1915(g).

## I. STATUTORY SCREENING

The court is required to screen all in forma pauperis prisoner complaints filed against government officials, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a).  *See Byrd v. Phx. Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018).  Claims or complaints that are frivolous, malicious, fail to state a claim for relief, or seek damages from defendants who are immune from suit must be dismissed.  *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

Screening under 28 U.S.C. §§ 1915(e)(2) and 1915A(a) involves the same standard of review as that used under Federal Rule of Civil Procedure

12(b)(6). *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam). Under this standard, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct. *See id.*

In conducting this screening, the court liberally construes pro se litigants' pleadings and resolves all doubts in their favor. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). The court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint. *See Lopez*, 203 F.3d at 1130. When a claim cannot be saved by amendment, however, dismissal with prejudice is appropriate. *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II.  BACKGROUND[3]

Burns signed the Complaint on March 15, 2023, and the court received and filed the Complaint on March 22, 2023. ECF No. 1. The court

---

[3] Burns' factual allegations are accepted as true for purposes of screening. *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

granted Burns' Application to Proceed In Forma Pauperis by a Prisoner, ECF No. 2, on March 23, 2023, ECF No. 3.

In Count I, Burns alleges that the Hawaii Paroling Authority ("HPA") failed to follow its own guidelines while setting his minimum term of imprisonment.[4]  ECF No. 1 at PageID.5.  According to Burns, the HPA did not consider all the enumerated criteria in setting his minimum term, and it failed to provide him with "adverse material."  *Id.*

In Count II, Burns alleges that Judge Fujino denied him additional time to prepare for trial.  *Id.* at PageID.6.  Because of this, Burns asserts, he was denied a fair trial.  *Id.*  In Count III, Burns alleges that Judge Fujino also violated his constitutional rights by denying two requests to "fire" his court-appointed counsel.  *Id.* at PageID.7.  In Count IV, Burns alleges that Judge Fujino violated his constitutional rights by revoking his bail.  *Id.* at PageID.8.

---

[4] Under Hawaii law, after a person is "sentenced to an indeterminate or an extended term of imprisonment, the Hawaii paroling authority shall . . . hold a hearing, and on the basis of the hearing make an order fixing the minimum term of imprisonment to be served before the prisoner shall become eligible for parole."  Haw. Rev. Stat. § 706-669(1).  In establishing a minimum term of imprisonment, the HPA considers various factors including the nature of the offense, the degree of injury or loss, the offender's criminal history, the character and attitude of the offender, the offender's efforts to live a "pro-social" life, and the offender's role in the offense.  *See* Guidelines for Establishing Minimum Terms of Imprisonment, https://dps.hawaii.gov/wp-content/uploads/2012/09/HPA-Guidelines-for-Establishing-Minimum-Terms-of-Imprisonment.pdf (last visited Apr. 5, 2023); *see also* Haw. Rev. Stat. § 706-669(8) ("The authority shall establish guidelines for the uniform determination of minimum sentences which shall take into account both the nature and degree of the offense of the prisoner and the prisoner's criminal history and character.").

In Count V, Burns alleges that he was arrested on June 17, 2022. At some point during the arrest, a Hawaii Police Department officer referred to a "warrant for [p]robation [r]evocation." *Id.* at PageID.9. When Burns asked to see a copy of the warrant, he was given "Bench Warrant #C312005140." *Id.* The warrant was dated June 3, 2020. *Id.* According to Burns, that warrant had already been executed. *Id.* When Burns explained this to Sergeant Secobia, he ignored Burns. *Id.* Burns spent a weekend in jail and posted $2,500 in bail to secure his release. *Id.*

Burns seeks the creation of "an oversight committee that reviews [the HPA's] decisions and guarantees [that] they follow the guidelines established by [the] legislature." *Id.* at PageID.10. Burns also seeks unspecified damages for his various claims. *Id.*

### III.  DISCUSSION

**A.  Eleventh Amendment**

Burns names four Defendants in the Complaint including two state officials—Judge Fujino and Hyun—and the State of Hawaii. ECF No. PageID.1–PageID.2. Burns names Judge Fujino and Hyun in both their individual and official capacities. *Id.*

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official

capacities." *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) (citation omitted); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–03 (1984).  It does not bar official-capacity suits against state officials for prospective relief to enjoin alleged ongoing violations of federal law.  *See Wolfson v. Brammer*, 616 F.3d 1045, 1065–66 (9th Cir. 2010); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989).  Nor does it bar suits for damages against state officials in their personal capacities.  *See Hafer v. Melo*, 502 U.S. 21, 30–31 (1991); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003).

Regarding the State of Hawaii, "[t]he Eleventh Amendment jurisdictional bar applies regardless of the nature of relief sought," absent unequivocal consent by the state.  *Krainski v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ.*, 616 F.3d 963, 967 (9th Cir. 2010).  It is well settled that "Hawaii has not unequivocally waived its sovereign immunity," *Thompson v. Paleka*, 2017 WL 5309608, at *4 (D. Haw. Nov. 13, 2017); and Congress has not overridden that immunity for civil rights actions brought pursuant to 42 U.S.C. § 1983, *Will*, 491 U.S. at 66.  Thus, to the extent Burns seeks from the State of Hawaii damages and the creation of an "oversight committee" to review the decisions of the HPA, *see* ECF No. 1 at PageID.10, those claims are barred by the Eleventh Amendment and therefore DISMISSED with prejudice.  *See Neal v. Shimoda*, 131 F.3d 818, 832 n.17 (9th Cir. 1997) ("We . . . agree with the district

court that the State of Hawaii is entitled to the protections of sovereign immunity under the Eleventh Amendment." (citation omitted)).

To the extent Burns seeks damages from Judge Fujino and Hyun in their official capacities, any such claims are also barred by the Eleventh Amendment and DISMISSED with prejudice. *See Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016) ("The Eleventh Amendment bars claims for damages against a state official acting in his or her official capacity." (citation omitted)). For the reasons set forth in the following sections, Burns' claims for money damages against Judge Fujino and Hyun in their individual capacities also must be dismissed.

**B.   Judicial Immunity**

In Counts II, III, and IV, Burns asserts various claims against Judge Fujino. *Id.* at PageID.6–PageID.8.

"It is well settled that judges are generally immune from suit for money damages."[5] *Lund v. Cowan*, 5 F.4th 964, 970 (9th Cir. 2021) (internal

---

[5] Burns does not seek any prospective injunctive relief against Judge Fujino. Even if he were seeking such relief, 42 U.S.C. § 1983 states that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." Burns does not allege that Judge Fujino violated a declaratory decree, nor can he allege that declaratory relief was unavailable to him. Indeed, "'[d]eclaratory relief against a judge for actions taken within his or her judicial capacity is ordinarily available by appealing the judge's order [in state court].'" *Yellen v. Hara*, 2015 WL 8664200, at *11 (D. Haw. Dec. 10, 2015) (alterations in original) (quoting *Agbannaoag v. Honorable Judges of Cir. Ct. of First Cir. of Hawaii*, 2013 WL
(continued . . .)

quotation marks and citation omitted), *cert. denied*, 142 S. Ct. 900 (2022). "[J]udicial immunity ensures that challenges to judicial rulings are funneled through more efficient channels for review like the appellate process." *Id.* at 971. "Judicial immunity also serves the goal of judicial independence." *Id.* "Subjecting judges to liability for the grievances of litigants would destroy that independence without which no judiciary can be either respectable or useful." *Id.* (internal quotation marks and citation omitted).

Although judicial immunity applies only to judicial acts—not to administrative, legislative, or executive functions that judges may sometimes perform—courts have a "broad conception of what constitutes a judicial act." *Id.* Thus, a judicial act does not stop being a judicial act "even if the judge acted with malice or corruption of motive." *Id.* at 972 (internal quotation marks and citation omitted); *see also Mireles v. Waco*, 502 U.S. 9, 11 (1991) ("[J]udicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial.").

Here, Burns alleges that Judge Fujino denied him additional preparation time before proceeding with jury selection, denied his two requests to "fire" his court-appointed counsel, and wrongfully revoked his bail. ECF No. 1 at

---

5325053, at *3 (D. Haw. Sept. 20, 2013)). Thus, any claims for prospective relief against Judge Fujino would also be dismissed.

PageID.6–PageID.8.  Plainly, all of Burns' claims against Judge Funjino are based on judicial acts.  Burns' claims do not relate to any administrative, legislative, or executive function performed by Judge Fujino.  *See Francis v. United States*, 2008 WL 4447703, at *9 (N.D. Cal. Sept. 30, 2008) (concluding that jury selection, among other things, was a judicial act), *aff'd*, 376 F. App'x 792 (9th Cir. 2010); *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1133 (9th Cir. 2001) ("Ruling on a motion is a normal judicial function, as is exercising control over the courtroom while court is in session."), *as amended on denial of reh'g* (Oct. 11, 2001); *Myers v. Doe 1*, 2020 WL 1878122, at *1 (W.D. Wash. Jan. 14, 2020) ("A judge's decision to revoke bail, deny or alter bail conditions, issue arrest warrants and remand a person charged with a crime are judicial acts taken within the judge's jurisdiction."), *report and recommendation adopted*, 2020 WL 1875490 (W.D. Wash. Apr. 15, 2020).

Burns' claims against Judge Fujino in Counts II, III, and IV are therefore DISMISSED.  Because amendment would be futile, these claims are dismissed with prejudice.[6]

---

[6] Even if Judge Fujino were not immune from suit, Burns cannot assert claims that "would necessarily imply the invalidity of his conviction or sentence . . . unless [he] can demonstrate that the conviction or sentence has already been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994).  Burns has not alleged, much less proven, that any "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.*

## C. Legal Framework for Claims Under 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). Section 1983 requires a connection or link between a defendant's actions and the plaintiff's alleged deprivation. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978); *Rizzo v. Goode*, 423 U.S. 362, 371–72, 377 (1976); *May v. Enomoto*, 633 F.2d 164, 167 (9th Cir. 1980). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted). Thus, a plaintiff must allege that he suffered a specific injury because of a particular defendant's conduct and must affirmatively link that injury to the violation of his rights.

\\\

\\\

\\\

\\\

### D.     Fourteenth Amendment Claim Against Hyun

Burns alleges in Count I that Hyun violated the Fourteenth Amendment by failing to follow the HPA's guidelines while setting Burns' minimum term of imprisonment.[7]  ECF No. 1 at PageID.5.

The Due Process Clause of the Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  Courts apply a two-step inquiry to determine whether a prisoner's procedural due process rights were violated.  First, the court determines "whether the inmate was deprived of a constitutionally protected liberty or property interest."  *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022).  Second, the court decides "whether that deprivation was accompanied by sufficient procedural protections."  *Id.*

A liberty interest "may arise from the Constitution itself . . . or it may arise from an expectation or interest created by state laws or policies."  *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  As the Supreme Court has stated, "[t]here is no right under the Federal Constitution to be conditionally released before the

---

[7] Burns also cites the Fifth and Sixth Amendments, *see* ECF No. 1 at PageID.5, but those provisions have no application here.  "[T]he Fifth Amendment's due process clause only applies to the federal government," *Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008), and Hyun is a state official.  While the Sixth Amendment protects certain trial rights of criminal defendants—for example, the right to a public trial without unnecessary delay, the right to a lawyer, the right to an impartial jury, and a defendant's right to know his or her accusers and the nature of the charges against him or her—none of these rights are implicated by the allegations in Count I.  *See* U.S. Const. amend. XI.

expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners." *Swarthout v. Cooke*, 562 U.S. 216, 220 (2011). Although state law "may create liberty interests in parole release that are entitled to protection under the Due Process Clause," *Bd. of Pardons v. Allen*, 482 U.S. 369, 371 (1987), it is well settled that there is no state-created liberty interest in parole in Hawaii, *Ruh v. Hawaii*, 185 F. Supp. 3d 1268, 1272 (D. Haw. 2016) ("It is long settled that Hawaii's parole statutes and State law do not create a liberty interest in parole or release prior to the expiration of a maximum term."). Having no liberty interest in parole, Burns "has no liberty interest in the setting of a minimum term to determine when, if ever, he is eligible for parole." *Jelks v. Thomas*, 2011 WL 2604718, at *5 (D. Haw. June 29, 2011); *see also Williamson v. Haw. Paroling Auth.*, 97 Haw. 183, 195, 35 P.3d 210, 222 (2001) (stating that "the determination of a prisoner's minimum term is part of the parole process").

Thus, Burns' claim against Hyun in Count I based on the setting of his minimum term of imprisonment is DISMISSED with prejudice.

E.  **Fourth Amendment Claims Against Sergeant Secobia**

Burns alleges that Sergeant Secobia violated his constitutional rights by relying on a previously executed warrant during a June 17, 2022 arrest.[8]  ECF

---

[8] Although Burns cites the Fifth Amendment and the Eighth Amendment, the court liberally construes Count V to be based on the Fourth Amendment, which protects individuals
(continued . . .)

No. 1 at PageID.9.  Burns names Sergeant Secobia in both his official and individual capacities.  *Id.* at PageID.2.

1. ***Official Capacity Claim***

As the Supreme Court has explained, "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."  *Monell*, 436 U.S. at 690 n.55.  In other words, an "official capacity" claim against Sergeant Secobia is a claim against the entity that employs him.

In *Monell*, the Supreme Court held that a municipality could be "sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."  *Id.* at 690–91.  In addition, the Supreme Court has held that a municipality can be liable under Section 1983 for a "failure to train" when "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  *City of Canton v. Harris*, 489 U.S. 378, 388

---

against unreasonable searches and seizures.  *See United States v. Anderson,* 56 F.4th 748, 756 (9th Cir. 2022); *see also Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 369–70 (2017) ("[T]he Fourth Amendment governs a claim for unlawful pretrial detention.").

(1989). A municipality cannot be held liable under Section 1983 "solely because it employs a tortfeasor–or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691.

Thus, a plaintiff can allege municipal liability under Section 1983 in any of three ways. First, a municipality can be liable when it or a person with final policymaking authority within the municipality expressly enacts or authorizes a policy respecting a challenged action. *Id.* at 690; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482–83 (1986) ("The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable."). In this regard, a municipality can also be liable when a final policymaker "ratifie[s]" a subordinate's conduct and the basis for it. *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066–67 (9th Cir. 2013). Second, a municipality can be liable for a custom that, although not expressly enacted, is "so permanent and well settled" it operates with the force of law. *Monell*, 436 U.S. at 691 (internal quotation marks omitted). Third, a municipality can be liable for a failure to train its employees when such failure amounts to deliberate indifference towards the rights of its inhabitants. *City of Canton*, 489 U.S. at 388. In addition, a plaintiff must allege that a policy, custom, or failure to train actually caused a municipality's employee to commit the constitutional deprivation. *Id.* at 391; *Monell*, 436 U.S. at 694.

Burns does not allege that Sergeant Secobia acted pursuant to a policy or a custom, nor does Burns allege that the Hawaii Police Department failed to train Sergeant Secobia. Thus, Burns fails to state an official-capacity claim against the Hawaii Police Department or Hawaii County. *See Finefeuiaki v. Maui Police Dep't*, 2018 WL 4839001, at *2–3 (D. Haw. Oct. 4, 2018) (dismissing claims against officers of the Maui Police Department in their official capacities). Any official capacity claim against Sergeant Secobia is therefore DISMISSED with leave granted to amend.

### 2.    *Individual Capacity Claim*

"A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Lacey v. Maricopa County,* 693 F.3d 896, 918 (9th Cir. 2012) (internal quotation marks and citation omitted). "An arrest made pursuant to a facially valid arrest warrant satisfies the Fourth Amendment." *Libby v. City of Medford*, 2017 WL 2219995, at *9 (D. Or. Mar. 17, 2017), *report and recommendation adopted*, 2017 WL 2219980 (D. Or. May 19, 2017).

Here, Burns has not plausibly alleged an unlawful arrest claim. According to Burns, he was arrested on June 17, 2022, based, at least in part, on a June 3, 2020 warrant. ECF No. 1 at PageID.9. Burns does not say, however, if the previously executed warrant was the only basis for his arrest. For example, Burns

does not say if there was another, outstanding warrant for his arrest. Nor does Burns allege that there was no independent source of probable cause for his arrest. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."). Without more, Burns' Fourth Amendment claim against Sergeant Secobia in his individual capacity cannot proceed. *See Erdman v. Cochise County, Arizona*, 926 F.2d 877, 882 (9th Cir. 1991) ("The second arrest alone was not a constitutional violation because it was pursuant to a facially valid bench warrant."); *Valdez v. Linder*, 2010 WL 378354, at *4 (D. Mont. Feb. 1, 2010) ("Where an arresting officer has a reasonable, good faith belief that he is acting pursuant to a properly issued warrant, the arrest is not a false arrest and is not unconstitutional.").

Burns' Fourth Amendment claims in Count V against Sergeant Secobia are therefore DISMISSED with leave granted to amend.

## IV.  **LEAVE TO AMEND**

The Complaint is DISMISSED with partial leave to amend. Burns must file any amended pleading on or before **May 8, 2023**. Burns may not expand his claims beyond those already alleged herein or add new claims, without explaining how those new claims relate to the claims alleged in the Complaint.

Claims that do not properly relate to those in the Complaint are subject to dismissal.

Burns must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii. Local Rule 10.4 requires that an amended complaint be complete in itself, without reference to any prior pleading. An amended complaint must be short and plain, comply with Rule 8 of the Federal Rules of Civil Procedure, and be submitted on the Court's prisoner civil rights form. *See* LR99.2(a). An amended complaint will supersede the preceding complaint. *See Ramirez v. Cnty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015). Defendants not renamed and claims not realleged in an amended complaint may be deemed voluntarily dismissed. *See Lacey*, 693 F.3d at 928.

## V. **28 U.S.C. § 1915(g)**

If Burns fails to file an amended complaint or is unable to amend his claims to cure their deficiencies, this dismissal may count as a "strike" under 28 U.S.C. § 1915(g). Under this "3-strikes" provision, a prisoner may not bring a civil action or appeal a civil judgment in forma pauperis,

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

## VI. **CONCLUSION**

(1) The Complaint, ECF No. 1, is DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b).

(2) All of Burns' claims against the State of Hawaii, Judge Fujino, and Hyun are DISMISSED with prejudice.

(3) Burns' claims against Sergeant Secobia are DISMISSED with leave granted to amend.

(4) Burns must file any amended pleading on or before **May 8, 2023**.

(5) Failure to timely file an amended pleading may result in AUTOMATIC DISMISSAL of this suit without further notice, and Burns may incur a strike under 28 U.S.C. § 1915(g).

(6) ALTERNATIVELY, Burns may voluntarily dismiss this action pursuant to Federal Rule of Civil Procedure 41(a)(1), and such a dismissal will not count as a strike under 28 U.S.C. § 1915(g).

(7) The Clerk is DIRECTED to send Burns a blank prisoner civil rights complaint form so that he can comply with this order if he elects to file an amended pleading.

\\\

\\\

\\\

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 6, 2023.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Burns v. State of Hawaii, et al.*, Civ. No. 23-00143 JMS-KJM, Order Dismissing Prisoner Civil Rights Complaint, ECF No. 1, with Partial Leave to Amend