IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| NICHOLAS DONALD BURNS, #A5003928,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF HAWAII, MARCO SEGOBIA, OFFICER MCFADDEN,<br><br>Defendants. | CIV. NO. 23-00143 JMS-KJM<br><br>ORDER GRANTING DEFENDANTS SEGOBIA AND MCFADDEN'S MOTION FOR SUMMARY JUDGMENT, ECF NO. 37, AND REVOKING PLAINTIFF'S IN FORMA PAUPERIS STATUS FOR ANY APPEAL |

**ORDER GRANTING DEFENDANTS SEGOBIA AND MCFADDEN'S MOTION FOR SUMMARY JUDGMENT, ECF NO. 37, AND REVOKING PLAINTIFF'S IN FORMA PAUPERIS STATUS FOR ANY APPEAL**

## I. INTRODUCTION

Defendants Marco Segobia ("Segobia") and "Officer McFadden" ("McFadden")[1] move for summary judgment as to the sole remaining claim in this civil rights action alleging a wrongful arrest brought by pro se Plaintiff Nicholas Donald Burns ("Plaintiff" or "Burns"). *See* ECF No. 37. Based on the following, the Motion for Summary Judgment is GRANTED.

---

[1] Officer McFadden's name is Curry McFadden. *See* ECF No. 38-2 at PageID.206.

## II. <u>BACKGROUND</u>

**A.    Procedural Background**

Plaintiff is currently incarcerated at the Waiawa Correctional Facility, although the facts of the First Amended Complaint ("FAC") are apparently not related to his current incarceration. *See* ECF No. 6 at PageID.58 n.1.[2] After Plaintiff initiated this action on March 22, 2023, ECF No. 1, the court granted Plaintiff's Application to Proceed In Forma Pauperis ("IFP") by a Prisoner on March 23, 2023, ECF No. 3. On April 6, 2023, the court screened the original complaint and dismissed claims against the State of Hawaii and Hawaii Judges Fujino and Hyun. *See* ECF No. 4. Plaintiff filed the FAC on April 27, 2023, ECF No. 5, which the court dismissed in part in a May 1, 2023 screening order. *See* ECF No. 6.

The FAC made official and individual-capacity claims under 42 U.S.C. § 1983 against Segobia and McFadden based on alleged Fourth and Fourteenth Amendment violations stemming from a June 18, 2022 arrest of Plaintiff.[3] The arrest was made pursuant to an April 23, 2020 Amended Warrant of

---

[2] When he filed the original Complaint and FAC, Plaintiff was incarcerated at the Halawa Correctional Facility ("HCF"). *See* ECF No. 6 at PageID.58 n.1; ECF No. 1 at PageID.1.

[3] The FAC named "Sergeant Secobia" as a Defendant, but the record establishes that his last name is spelled "Segobia." *See* ECF No. 38-3 at PageID.211.

Arrest for Plaintiff based on an alleged violation of Hawaii Revised Statutes ("HRS") § 706-626 for a probation violation. ECF No. 5 at PageID.44; ECF No. 38-8 at PageID.275. As it turns out, that warrant had already been served in May of 2020.

Segobia and McFadden are police officers with the County of Hawaii Police Department ("HPD"). *See* ECF No. 38-2 at PageID.206; ECF No. 38-3 at PageID.211. The court's May 1, 2023 screening order dismissed official capacity claims against Segobia and McFadden, but allowed individual capacity § 1983 claims for unlawful arrest to continue against them. *See* ECF No. 6 at PageID.68.

After unsuccessful attempts by Plaintiff to obtain counsel, *see* ECF Nos. 13, 33, Segobia and McFadden filed their Motion for Summary Judgment on December 13, 2024. ECF No. 37. The Motion is supported by a concise statement of facts and 12 exhibits, including declarations and documents. *See* ECF Nos. 38, 38-1 to 38-13. Plaintiff filed his Opposition on January 22, 2025, ECF No. 47, although he did not provide any evidence to support his arguments.[4] Defendants

---

[4] "Although pro se litigants are held to less stringent standards than represented parties, *Jackson v. Carey*, 353 F.3d 750, 757 (9th Cir. 2003), they must comply with the procedural or substantive rules of the court." *Namauu v. Espinda*, 2010 WL 4736604, at *4 (D. Haw. Nov. 15, 2010) (applying standards to pro se prisoners); LR1.3 ("All parties, including those proceeding pro se, are obligated to follow [the court's] Local Rules."). In this regard, on December 16, 2024, Plaintiff was provided with a "Notice to Pro Se Litigants," explaining summary judgment procedures and requirements of Federal Rule of Civil Procedure 56, as instructed by *Rand v. Rowland*, 154 F.3d 952, 960 (9th Cir. 1998). *See* ECF No. 39.

filed their Reply on March 4, 2025. *See* ECF No. 48. The court decides the

Motion without a hearing pursuant to Local Rule 7.1(d).

## B.   Factual Background

The uncontested evidentiary record establishes the following facts.

On December 12, 2019, Plaintiff was convicted in the Third Circuit Court, State of

Hawaii, of (1) Theft in the Third Degree in violation of HRS §§ 708-830(1) and

708-832(1)(a) (a misdemeanor), and (2) Promoting a Dangerous Drug in the Third

Degree in violation of HRS § 712-1243(1) (a felony). *See* ECF No. 38-7 at

PageID.269. He was sentenced to four years of probation. *Id.* at PageID.270. On

April 23, 2020, a Hawaii Third Circuit Court judge issued an Amended Warrant of

Arrest for Burns "pursuant to Section 706-626, [HRS]," which authorizes arrests

for violations of probation. *See* ECF No. 38-8 at PageID.275. The probation arrest

warrant set bail at $2,500. *Id.* at PageID.276. The warrant was served on Burns on

May 28, 2020 by "B. Scanlan" while Burns was incarcerated at the HCF, although

"B. Scanlan" was not employed by the HPD. *See* ECF No. 38-6 at PageID.235;

ECF No. 38-9 at PageID.278; ECF No. 38-4 at PageID.216.

On Saturday, June 18, 2022, McFadden was a patrol officer on duty in

Kona on Hawaii Island. ECF No. 38-2 at PageID.206. He responded to a dropped

911 call at an apartment complex in Kailua-Kona. *Id.* at PageID.207. McFadden

observed a truck driving in the parking lot and "using the mobile terminal in [his]

4

vehicle," he ran the license plate in an HPD database.  *Id.*  "According to the database, the truck had previously been associated with an individual named [Nicholas] Burns ('Burns').  The same database indicated that Burns was flagged red indicating he had an active warrant of arrest."  *Id.*

After Burns exited his truck, McFadden contacted Burns and activated his body-worn camera ("body cam").  *Id.*; ECF No. 38-10 (flash drive).  McFadden detained Burns, told Burns he had warrant for a probation violation, and contacted "Central Dispatch for confirmation the warrant was still active as [he] noticed the date for the warrant was 2020."  ECF No. 38-2 at PageID.207–208.  Central Dispatch informed McFadden by radio that the warrant was active.  *Id.* at PageID.208.  McFadden asked for additional confirmation from the "Receiving Desk" (the "Rank" or ranking officer on duty).  *Id.*; ECF No. 38-3 at PageID.211–212.  McFadden "heard the Receiving Desk . . . confirm the Warrant was still active and [he] acknowledged this over the radio."  ECF No. 38-2 at PageID.208.  McFadden arrested Burns and transported him to the Kealakehe Police Station in Kailua-Kona.  *Id.* at PageID.209.  During the trip, McFadden looked up Burns' employer's phone number and allowed Burns to use his phone to notify his employer he would be missing work.  *Id.*

McFadden's supervisor was Segobia, who was the ranking officer on June 18, 2022.  ECF No. 38-3 at PageID.211–212.  Segobia was "familiar with

Burns from prior police contacts when [Segobia] was assigned to the Vice

Section." *Id.* at PageID.212.  Segobia was the "Rank" who had confirmed with

McFadden that the probation arrest warrant was active.  *Id.*  Segobia attests that

"[i]t is HPD procedure for officers to contact Central Dispatch to request

verification of warrants." *Id.*  "Central Dispatch would then contact the 'Rank' at

the Receiving Desk . . . to confirm the warrant is active as Rank have access to the

eWarrant database, [which is] a database maintained by the State of Hawaii

Judiciary for the purpose of tracking warrants of arrest statewide." *Id.*  Segobia

checked the "eWarrant database" and it showed that the probation warrant had not

been served.  *Id.* at PageID.213.  Segobia then "updated the eWarrant database to

show that the Warrant was served on Burns, [as] no prior entries in the database

indicate[d] the Warrant was previously served." *Id.*  Segobia attests that:

> The Warrant was signed by Judge Jeffrey A. Hawk, who
> is known to me as a current state judge in Hilo.  The
> Warrant appeared valid, and was located within the State
> of Hawai'i Judiciary's eWarrant database and according
> to that database . . . the Warrant had not been served as of
> June 18, 2022.

*Id.*  He also explains that "[i]n [his] experience as a police officer it is not

uncommon for an arrestee on a warrant to claim the warrant was invalid,

previously served, was for someone else, or a number of other reasons in an

attempt to avoid arrest." *Id.*  Although Burns protested, when Burns arrived at the

station, Segobia "spoke with Burns and informed him according to our records the

6

warrant was valid and active, and it would be up to the court to fix the error, if one existed." *Id.* at PageID.214. In sum—according to the uncontested evidence in the record—although the docket of Burns' case (at least currently) indicates that the 2020 warrant had been served in May of 2020 by "B. Scanlan," the eWarrant database in June 2022 failed to reflect that it had been served.[5]

The next day, Sunday, June 19, 2022, Dona Lavorin (who is Plaintiff's mother) provided cash bail of $2,500 and Burns was released. *See* ECF No. 38-5 at PageID.218; ECF No. 38-12. Plaintiff's FAC explains that his mother posted the bail. *See* ECF No. 5 at PageID.55. The FAC further explains that at a July 21, 2022 hearing "it was determined that there was no bench warrant out for [him]," and that he "was given back [his] bail money and discharged from [his mother's] custody." *Id.*[6]

## III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.

---

[5] Despite the issues with the arrest warrant, no one disputes that Burns was in fact on probation on June 18, 2022, and the record confirms this. According to Burns' state court docket sheet, the State of Hawaii withdrew a pending Motion for Revocation of Probation on June 3, 2021. *See* ECF No. 38-6 at PageID.242. And on November 2, 2022, it filed another Motion to Revoke Probation. *See id.* at PageID.243. The record thus establishes that, as of June 18, 2022, Plaintiff was still on probation.

[6] The state court docket sheet confirms that a hearing was set for July 21, 2022, but does not contain an actual entry for July 21, 2022. *See* ECF No. 38-6 at PageID.243. Nevertheless, it appears uncontested that the bail money was returned as the FAC alleges.

R. Civ. P. 56(a).  "An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law."  *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

 "The moving party initially bears the burden of proving the absence of a genuine issue of material fact."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  "When the moving party has carried its burden . . . its opponent must do more than simply show that there is some metaphysical doubt as to the material facts"; instead, the opponent must "come forward with specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (citation and internal quotation marks omitted).  "This burden is not a light one.  The non-moving party must show more than the mere existence of a scintilla of evidence."  *In re Oracle*, 627 F.3d at 387 (citation omitted); *see also Anderson*, 477 U.S. at 248 (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

 When considering a motion for summary judgment, the court views the facts and draws reasonable inferences in the light most favorable to the nonmovant.  *See, e.g.*, *Scott v. Harris*, 550 U.S. 372, 378 (2007).  "[T]he court

does not make credibility determinations or weigh conflicting evidence."

*Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

## IV.  <u>DISCUSSION</u>

### A.    **No Constitutional Violation Under Either the Fourth or Fourteenth Amendments**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege:

(1) that a right secured by the Constitution or laws of the United States was

violated; and (2) that the alleged violation was committed by a person acting under

color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).  Plaintiff asserts a

§ 1983 claim against Officers McFadden and Segobia based on both the Fourth and

Fourteenth Amendments.  ECF No. 5 at PageID.43.  He claims that Defendants

lacked probable cause to arrest and detain him because the two-year-old arrest

warrant for a probation violation had already been served.  The claim against

McFadden (who was the arresting officer in the field) is analyzed based on the

Fourth Amendment (made applicable to the States by the Fourteenth Amendment).

The claim against Segobia (who is McFadden's supervisor and did not arrest

Plaintiff but verified whether the probation arrest warrant was outstanding) is

analyzed under the Fourteenth Amendment's due process clause.  *See, e.g.*, *Rivera*

*v. County of Los Angeles*, 745 F.3d 384, 389 (9th Cir. 2014).

*Rivera* analyzed a § 1983 wrongful arrest claim (arising out of an

arrest based on mistaken identity with a valid warrant) under the Fourth

Amendment, but then analyzed "detainment after arrest" under the Fourteenth.

The plaintiff in *Rivera* "challege[d] his detainment after arrest under both the

Fourth Amendment and the Fourteenth Amendment," *id.*, but the Ninth Circuit

reiterated that "[p]recedent demonstrates, however, that post-arrest incarceration is

analyzed under the Fourteenth Amendment alone." *Id.* at 389–90 (citations

omitted). *See, e.g.*, *Lee v. City of Los Angeles*, 250 F.3d 668, 683 (9th Cir. 2001)

(addressing an initial arrest under the Fourth Amendment and subsequent detention

under the Fourteenth, reasoning in part that "a detainee has 'a [due process]

constitutional right to be free from continued detention after it was or should have

been known that the detainee was entitled to release.'") (quoting *Cannon v. Macon*

*County*, 1 F.3d 1558, 1563 (11th Cir. 1993)).

### 1. *Fourth Amendment Claim*

Initially, Plaintiff's probation status may be an important threshold

factor in the proper Fourth Amendment analysis. Generally, "an arrest without

probable cause violates the Fourth Amendment and gives rise to a claim for

damages under § 1983." *Lee*, 250 F.3d at 685 (citation omitted). But this is not

necessarily so for those on parole, and thus an issue arises whether probable cause

is required to arrest someone on probation.

The Fourth Amendment guarantees a right to be free from

"unreasonable searches and seizures" and provides that "no Warrants shall issue,

but upon probable cause . . . ."  U.S. Const. amend. IV.  An arrest is considered a

"seizure" for purposes of the Fourth Amendment.  *See, e.g.*, *Hayes v. Florida*, 470

U.S. 811, 816 (1985).  *Hayes*, for example, found a Fourth Amendment violation

"when the police, without probable cause or a warrant, forcibly remove a person

from his home or other place in which he is entitled to be and transport him to the

police station, where he is detained, although briefly, for investigative purposes."

*Id.*  It held that "such seizures, *at least where not under judicial supervision*, are

sufficiently like arrests to invoke the traditional rule that arrests may

constitutionally be made only on probable cause."  *Id.* (emphasis added).

And so, as this court recognized in *Cornel v. Hawaii*, "probable cause

is not required to arrest a parolee for a violation of parole."  501 F. Supp. 3d 927,

943 (D. Haw. 2020) (quoting *Sherman v. U.S. Parole Comm'n*, 502 F.3d 869, 884

(9th Cir. 2007)), *aff'd*, 37 F.4th 527 (9th Cir. 2022).  Rather, a more general (and

lower) standard of reasonableness applies to arrests of parolees because "[a]

parolee, while free of the prison walls, still remains under legal custody."  *Id.*

(quoting *United States v. Rabb*, 752 F.2d 1320, 1324 (9th Cir. 1984)).  "Under the

general Fourth Amendment approach, [courts] assess reasonableness by examining

the totality of the circumstances and balancing the intrusion on the individual's

privacy against the promotion of legitimate governmental interests."  *Sherman*, 502

F.3d at 883 (citing *Samson v. California*, 547 U.S. 843, 848 (2006)).

11

Defendants, citing *Cornel* and *Sherman*, suggest that the holdings of such cases also apply to Plaintiff, who was on probation (not parole).  *See* ECF No. 37-1 at PageID.184–186; ECF No. 48 at PageID.326.  And if it is true that an arrest of a probationer—like for a parolee—passes Constitutional muster under the Fourth Amendment if there was only a reasonable basis for the arrest, then Plaintiff's arrest here was surely valid under the circumstances.

Here, when McFadden was investigating the dropped 911 call, he saw Plaintiff's vehicle pull into the parking lot.  Using a mobile terminal, McFadden checked a database used by the HPD, and that database associated the vehicle with Plaintiff and "indicated that Burns was flagged red indicating he had an active warrant of arrest."  ECF No. 38-2 at PageID.207.  McFadden informed Plaintiff that he had an active warrant for a probation violation.  *Id.*  McFadden then contacted HPD's Central Dispatch by radio to confirm that the probation warrant was still active.  Central Dispatch told McFadden that the warrant was active, but additional confirmation was sought from the Rank.  *Id.* at PageID.208; ECF No. 38-3 at PageID.211.  McFadden heard the Rank confirm that the warrant was still active, and McFadden acknowledged this over the radio.  ECF No. 38-2 at PageID.207.  McFadden proceeded to arrest Plaintiff and transport him to the

12

station.  *Id.* at PageID.209.[7]  All these facts are undisputed; Plaintiff has offered no

evidence to contradict the record.

McFadden thus had every reason to arrest Plaintiff—as far as he

knew, the probation warrant was active.  Its validity was confirmed twice.  He had

no way of knowing that the information was outdated.  He acted professionally

throughout.  McFadden certainly had a reasonable basis to arrest Plaintiff when

"examining the totality of the circumstances and balancing the intrusion on the

individual's privacy against the promotion of legitimate governmental interests."

*Sherman*, 502 F.3d at 883 (citing *Samson*, 547 U.S. at 848).  And this is so even if,

as it turns out, the warrant had already been served because—based on everything

McFadden knew—the warrant was facially valid.  *See, e.g.*, *Erdman v. Cochise*

*County, Arizona*, 926 F.2d 877, 882 (9th Cir. 1991) ("The . . . arrest alone was not

a constitutional violation because it was pursuant to a facially valid bench

warrant.") (citing *Baker v. McCollan*, 443 U.S. 137, 144 (1979)); *Rivera*, 745 F.3d

at 389 (finding no Fourth Amendment violation where officer had a "good faith,

reasonable belief that the arrestee was the subject of the warrant").  As *Baker*

---

[7]  The court has reviewed the body cam video, which confirms McFadden's declaration.
Indeed, the video corroborates that throughout the encounter McFadden acted professionally—
even friendly—without resistance from Plaintiff.  McFadden even used a cellphone to call
Plaintiff's employer so that Plaintiff could notify his employer that he would be missing work.

explained, "[t]he Constitution does not guarantee that only the guilty will be arrested."  443 U.S. at 145.

Nevertheless, it is unclear whether *Sherman*'s holding (that parole arrests can be constitutional without probable cause) extends to arrests of probationers.[8]  It is true that reasonable suspicion (not probable cause) is sufficient for *searches* of probationers under the Fourth Amendment.  *See Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987) ("To a greater or lesser degree, it is always true of probationers (as we have said it to be true of parolees) that they do not enjoy 'the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions.'") (brackets in original) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972)); *see also, e.g.*, *United States v. King*, 736 F.3d 805, 808 (9th Cir. 2013) ("Defendant's status as a probationer means that he begins with a lower expectation of privacy than is enjoyed by a citizen who is not subject to a criminal sanction.") (citing *United States v. Knights*, 534 U.S. 112, 119 (2001)).  *Griffin* thus held that searches of a probationer are constitutional if they are otherwise "reasonable" under the Fourth Amendment.  483 U.S. at 880; *see also Knights*, 534

---

[8]  *See also Rabb*, 752 F.2d at 1324 (extending reasonableness requirement—rather than probable cause—from parole searches to parole arrests).

14

U.S. at 118.[9]  But Defendants have not cited, and the court has not found, a case directly on point that extends *Griffin* from a search of a probationer to an *arrest*.

Previously, the Ninth Circuit had gone so far as to say that "there is no constitutional difference between probation and parole for purposes of the [F]ourth [A]mendment." *Motley v. Parks*, 432 F.3d 1072, 1083 n.9 (9th Cir. 2005) (citations omitted).  But the Ninth Circuit overruled that statement of law in *United States v. King*, 687 F.3d 1189 (9th Cir. 2012) (en banc), in light of the Supreme Court's statement in *Samson* that "parolees have fewer expectations of privacy than probationers."  547 U.S. at 850.  And so there may well be reason to still require probable cause to arrest a probationer without violating the Fourth Amendment.[10]

But the court need not decide whether a reasonableness standard is constitutionally sufficient to arrest a probationer.  Here, assuming that probable cause was required to arrest Plaintiff, the same facts that establish reasonableness

---

[9]  The Hawaii Supreme Court also recognizes the same general principle that "defendants sentenced to probation, like those on parole or in prison, are subject to limitations from which ordinary persons are free," *State v. Talo*, 153 Haw. 63, 67, 526 P.3d 588, 592 (2023) (citing *State v. Fields*, 67 Haw. 268, 277, 686 P.2d 1379, 1387 (1984)), and that warrantless searches are subject to more general reasonableness limitations.  *Id.*

[10]  HRS § 706-626(2) allows an officer to arrest a probationer without a warrant for failing to comply with a condition of probation, but it requires probable cause for such an arrest.  Similarly, 18 U.S.C. § 3606 provides "[i]f there is probable cause to believe that a probationer or a person on supervised release has violated a condition of his probation or release, he may be arrested . . . ."

also easily establish that McFadden had probable cause to arrest Plaintiff.

"Probable cause exists when there is a fair probability or substantial chance of

criminal activity." *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir.

2015) (internal quotation marks and citation omitted).  Stated alternatively,

"[p]robable cause to arrest exists when officers have knowledge or reasonably

trustworthy information sufficient to lead a person of reasonable caution to believe

that an offense has been or is being committed by the person being arrested."

*United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (citing *Beck v. Ohio*,

379 U.S. 89, 91 (1964)).  Probable cause "is not a high bar:  It requires only the

kind of fair probability on which reasonable and prudent people, not legal

technicians, act." *Miller v. Scottsdale*, 88 F.4th 800, 804 (9th Cir. 2023) (quoting

*Kaley v. United States*, 571 U.S. 320, 338 (2014) (internal quotation marks

omitted)).  "[T]he determination of probable cause is based upon the totality of the

circumstances known to the officers at the time of the arrest." *Velazquez*, 793 F.3d

at 1018 (internal quotation marks and citation omitted).

Given the information known to him at the time of arrest, McFadden

had a confirmed and facially-valid warrant to arrest Plaintiff for a probation

violation.  Under the circumstances—having checked with Central Dispatch and

then the ranking officer—McFadden had "reasonably trustworthy information"

that Plaintiff was subject to arrest. *Lopez*, 482 F.3d at 1072. All the facts that

would establish that McFadden's arrest was reasonable, also establish that he had

probable cause to arrest Plaintiff. A Fourth Amendment claim fails.[11]

### 2.    *Fourteenth Amendment Claim*

Plaintiff's contention that he was wrongfully detained (after being

arrested) because Defendants should have known the arrest warrant had already

been served—especially where he told the officers that he thought the warrant had

been taken care of earlier—is a due process claim under the Fourteenth

Amendment. *See Rivera*, 745 F.3d at 389–90. "[A] plaintiff's burden is to show

that defendants did not give him 'minimum due process appropriate to the

circumstances to ensure that his liberty was not arbitrarily abrogated.'" *Garcia v.*

*County of Riverside*, 817 F.3d 635, 640 (9th Cir. 2016) (quoting *Lee*, 250 F.3d at

684). "[Ninth Circuit] cases holding that a mistaken incarceration violated the Due

Process Clause fit into at least one of two categories. Either '(1) the circumstances

---

[11] At the very least, McFadden is entitled to qualified immunity from suit. *See, e.g.*,
*Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (reiterating that "[q]ualified immunity gives
government officials breathing room to make reasonable but mistaken judgments about open
legal questions" and protects "'all but the plainly incompetent or those who knowingly violate
the law'") (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Officials are entitled to
qualified immunity if they arrest a suspect under a mistaken belief that they have probable cause
to arrest, if the mistake was objectively reasonable. *See Hunter v. Bryant*, 502 U.S. 224, 228–29
(1991); *Edwards v. Baer*, 863 F.2d 606, 608 (8th Cir. 1988). McFadden had no reason to know
that he had been given outdated information, and any mistake by McFadden was certainly
"objectively reasonable."

indicated to the defendants that further investigation was warranted, or (2) the

defendants denied the plaintiff access to the courts for an extended period of

time.'" *Id.* (quoting *Rivera*, 745 F.3d at 390–91).[12]

      For the first prong, with mistaken identity situations, "the 'further

investigation' cases have involved significant differences between the arrestee and

the true suspect." *Rivera*, 745 F.3d at 391.  For the second prong, 'the 'denied

access' cases have involved significant periods of deprivation." *Id.*  As for a duty

to investigate, "[c]laims of innocence are common in jails; a jailor need not

independently investigate all uncorroborated claims of innocence if the suspect

will soon have the opportunity to assert his claims in front of a judge." *Id.*

"Unsupported claims of mistaken identity, by themselves, do not trigger a duty to

investigate further." *Id.* at 391–92.

      Applying these standards, the court easily concludes that Segobia did

not violate Plaintiff's due process rights.  The undisputed evidence is that Central

Dispatch had determined that the probation arrest warrant was still active, and

when he was contacted for confirmation, he checked "the eWarrant database,"

which is "a database maintained by the State of Hawaii Judiciary for the purpose of

---

[12]  Although *Rivera* concerned mistaken identity on a warrant, rather than—as here—
mistaken validity of a warrant, "*Rivera* made clear that 'there is no principled distinction
between claims of mistaken identity and other claims of innocence.'" *Tatum v. Moody*, 768 F.3d
806, 815 (9th Cir. 2014) (quoting *Rivera*, 745 F.3d at 391 n.4).

tracking warrants of arrest statewide."  ECF No. 38-3 at PageID.212.  The

eWarrant database "showed that Warrant # C312005140, ordered on April 23,

2020 in case ID 3CPC-19-0000511 for Nicholas Donald Burns had not been

served."  *Id.* at PageID.213.  "The Warrant appeared valid, and was located within

the State of Hawai'i Judiciary's eWarrant database and according to that database

. . . the Warrant had not been served as of June 18, 2022."  *Id.*  Plaintiff has

produced no evidence that contradicts Segobia's declaration.

   Although Plaintiff argues that Segobia could have investigated further

by checking the state court's docket sheet—which indeed indicates (at least

currently) "Bench Warrant Served" on June 3, 2020, *see* ECF No. 38-6 at

PageID.235—there is no evidence that Segobia (or, for that matter, McFadden) had

any reason to question the accuracy of the eWarrant database.  There is no

evidence that Segobia had any reason to know of the apparent discrepancy between

the eWarrant database and the state court's docket sheet.  It was not unreasonable

for Segobia to rely on the Hawaii Judiciary's database which is specifically used to

check the status of warrants.  In short, considering the uncontested evidence in the

record, there are no circumstances that "indicated to the defendants that further

investigation was warranted."  *Rivera*, 745 F.3d at 391.  As for the second prong—

given that Plaintiff posted bail the next day, and the bail was returned shortly

thereafter—the Defendants did not "den[y] the plaintiff access to the courts for an

extended period of time." *Id.* And, as with the Fourth Amendment claim against

McFadden, the short detention was constitutional because—based on everything

Segobia knew—the warrant was facially valid and active. *See, e.g.*, *Erdman*, 926

F.2d at 882 ("The . . . arrest alone was not a constitutional violation because it was

pursuant to a facially valid bench warrant.") (citing *Baker*, 443 U.S. at 144).

Again, as *Baker* explained, "[t]he Constitution does not guarantee that only the

guilty will be arrested." 443 U.S. at 145. A claim based on the Fourteenth

Amendment fails.[13]

## B.    No Further Claims

The court's May 1, 2023 screening order dismissed official capacity

claims against McFadden and Segobia because there was no basis for a claim

against their employer, the County of Hawaii (i.e., no claim based on *Monell v.

Department of Social Services of City of New York*, 436 U.S. 658 (1978)). *See*

ECF No. 6 at PageID.67–68. In that Order, the court stated that "[d]ismissal of

Burns' claims against Officer McFadden and Sergeant [Segobia] in their official

---

[13] Further, like McFadden, at the very least, Segobia is entitled to qualified immunity
from suit. *See, e.g.*, *Ashcroft*, 563 U.S. at 743 (reiterating that "[q]ualified immunity gives
government officials breathing room to make reasonable but mistaken judgments about open
legal questions" and protects "'all but the plainly incompetent or those who knowingly violate
the law'") (quoting *Malley*, 475 U.S. at 341). "Even law enforcement officials who 'reasonably
but mistakenly conclude that probable cause is present' are entitled to immunity." *Hunter*, 502
U.S. at 227 (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).

capacities does not foreclose Burns from later filing an amended pleading, subject

to the requirements of Federal Rule of Civil Procedure 15 and any applicable

orders of this court." *Id.* at PageID.68.  Now, however, given the court's rulings

that no constitutional violations occurred, it would clearly be futile for Plaintiff to

assert a *Monell* claim against the County of Hawaii.  *See, e.g.*, *Lockett v. County of

Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020) ("[*Monell*] claims are still

'contingent on a violation of constitutional rights.'") (quoting *Scott v. Henrich*, 39

F.3d 912, 916 (9th Cir. 1994)).[14]

## V.  **CONCLUSION**

For the foregoing reasons, the court GRANTS Defendants Segobia

and McFadden's Motion for Summary Judgment, ECF No. 37.  Plaintiff was

granted IFP status to bring this action.  The court now revokes that status for

---

[14]  At most, Plaintiff could have tried to make a state-law claim sounding in negligence based on an error in the "eWarrant" database.  But Plaintiff only asserted federal claims in the FAC, and in any event the court would decline to exercise supplemental jurisdiction over a state law negligence type of claim.  *See* 28 U.S.C. § 1367(c)(3) ("the district courts may decline to exercise supplemental jurisdiction [over state law claims] . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."); *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." (citation and internal quotation marks omitted)).

Moreover, under Hawaii law, it is well established that a nonjudicial government official performing a public duty enjoys the protection of a qualified privilege.  *See, e.g.*, *Towse v. State of Hawaii*, 64 Haw. 624, 631, 647 P.2d 696, 702 (1982).  Thus, any state law claim against McFadden or Segobia would likely fail for lack of evidence of malice.  *See, e.g.*, *Pahk v. Hawaii*, 109 F. Supp. 2d 1262, 1269 (D. Haw. 2000) ("For an action to lie against a [government] official acting under a claim of privilege, it is essential that the injured party allege and prove that the official was motivated by malice and not an otherwise proper purpose . . . .").

purposes of any appeal.  For the same reasons that easily establish the bases for

granting the Motion, the court certifies that any appeal that Plaintiff might take

from this order would not be "taken in good faith."  Fed. R. App. P. 24(a)(3)(A);

*see also Bennett v. Boy Scouts of America Aloha Council # 104*, 2024 WL

4694084, at *2 (D. Haw. Nov. 6, 2024) (certifying appeal to be frivolous and

denying leave to proceed in forma pauperis on appeal); 28 U.S.C. § 1915(a)(3)

("An appeal may not be taken in forma pauperis if the trial court certifies in writing

that it is not taken in good faith.").  The Clerk shall close the case.

   IT IS SO ORDERED.

   DATED:  Honolulu, Hawaii, April 7, 2025.



       /s/ J. Michael Seabright____
       J. Michael Seabright
       United States District Judge